May it please the Court, I'm John Raley and I represent Richard King, who at the time of the event in question was a West Point cadet. He was assaulted at Intercontinental Airport by defendants while he was on the telephone talking to his brother waiting for his ride to take him home. We briefed five points of error, just a little housekeeping, Your Honors. We are not asserting the third point of error, the legal sufficiency. We are going to assert, and I'll discuss it in a minute, total complete absence of evidence supporting findings, but we are no longer arguing the third point of error. That leaves the first point of error, jury submission of self-defense in defense of others without the required foundation. Second, the jury instruction on presumed reasonableness of conduct if Richard King was attempting to enter an occupied vehicle with force. There's no third. The next one is the jury verdict on Norma Harris that she did not commit assault, and the last is the failure to grant a new trial on that Norma Harris point. Just a little background, Your Honors. On March 11, 2011, Richard King was a West Point cadet. He had had some issues his first year, but those were long past. It's indisputed that he was on track to graduate in the fall of 2012. He had just been named team captain of the varsity football team selected by both his coaches and his fellow players. He led the team in interceptions as a defensive back the previous year, got an interception in the Army-Navy game. All of his prospects were high. He flew home to Houston for spring break. He was bumped up to first class and offered free drinks. He was not in uniform. He was of legal drinking age, and he was not going to drive a car. His brother was going to pick him up. He drank too much. But the surveillance videotape shows that he was in no way a dangerous danger to himself or others. He was a college kid coming home from spring break out of a military academy. We don't excuse drinking too much, but we do say it does not justify what happened to him. It doesn't justify an assault. Outside the airport, he saw a limousine. He was very interested in looking inside it. He wanted to know if he could get inside it. There is no evidence he ever touched it or touched the door handle or anything like that. The only discussion is verbal from Ephraim Holmes, and I'll describe it in detail in a minute. And there's nothing on the video showing that he at any time ever touched the vehicle. Ephraim Holmes, the bodyguard for Patti LaBelle, told him to step back, and he did, and stepped well away. And the videotape confirms that. Two minutes later, while he's on the phone to his brother, actually turned sideways away from the car, he says something to his brother on the phone that the LaBelle company don't like, that they felt was racist. It may well have been very racist. He doesn't have a memory of the events because of the traumatic brain injury he suffered, but for the sake of argument, we'll stipulate that it was something racist. Although that's... Is the problem, though, the... not the comment he made, but the fact that he doesn't have a memory of the event? Because all you have is testimony from all the defendants, no testimony from your client to counter it. So all you've got is the videotape. Well, fortunately, we do have the surveillance videotape, Your Honor. You've got to show it's just irrefutable. Yes. Well, also, don't leave out the evidence of the defendants, which I can go through in detail with you in just a second when we discuss the individual points. But Edwards says he got punched by your client. But you are correct that the evidence before the court is the videotape and the testimony of the defendants. You are correct. And I'll discuss those when... And Edwards says your client punched him. Right. We submit there's no evidence of that on the videotape, but that's kind of where we're going with it. Two minutes later, while he's on the phone, he says something they don't like. They attack him. Three on one, driving his head into a concrete pillar. He suffered traumatic brain injury and was unable to complete his classes at West Point that fall, play football. All of his dreams were crushed. So the first point of error, the court allowed a self-defense defense of others jury issue. That is a plea of confession and avoidance. According to the criminal cases, it's very, very clear. Van Brecken v. State said it in 2005, the defendant must admit violating the statute under which he is being tried, then offer a statutory justification for his otherwise criminal conduct. A defendant is not entitled to a jury instruction on self-defense if, through his own testimony or the testimony of others, he claims he did not perform the assault of acts alleged or they did not have the requisite mental state. So you can't attempt to justify something you deny doing in the first place. All affirmative defenses are pleas of confession and avoidance, and all of them get submitted this exact way every single day in state district courts all over Texas. I didn't find this remarkable in that sense, even if we assume that the Texas law governs how this jury charge should be done. And I'm not sure I should make that assumption, but I'll spot you that. This is how these things get submitted all the time. So I'm struggling. It seems to me you're kind of taking this very theoretical view of something that this is how it's done. That's a great question, Your Honor. Thank you. Affirmative defenses under the rules traditionally do not involve a question of the intent of the defendant. It's things like statute of limitations, rest judicata, court and satisfaction, those sorts of things. But normally, I'm not aware of one where the issue of the defendant's intent comes in. And I agree that it's okay for them to plead self-defense as an affirmative defense and the alternative. The question is, do they get a jury issue as to both, do they get two bites at the apple as to both? I mean, we all the time submit fraud and negligent misrepresentation, which are inconsistent with each other. We submit all kinds of questions for the plaintiff and for the defendant that are internally inconsistent with each other. I'm not sure these really are, but we do that. Go ahead. If I could just, Your Honor, it's very clear and if I could establish I think for the record, criminal law requires an admission of the assaultive act before there can be a jury issue as to self-defense. Very clear in criminal law. Now Your Honor's question is, how does that apply to civil law? So the only cases we could find on point are, and they've been cited by both sides, Gibbons v. Berlin, Court of Appeals Fort Worth out of 2005. In that case, Gibbons never denied punching Berlin and Mertz. There was one question submitted going to both of them and then the court eventually said well, because the defendant did not plead self-defense, it doesn't really matter. You don't get the self-defense question anyway. So it was really kind of a wash case. But in no way does this case stand for the proposition that you can deny an assault and get a self-defense jury question. Same thing with Norris v. Branson, which is a 1977 case, which involved a loss of an eye. The Gibbons one involved two broken jaws. There's no denial that it happened. Neither case stands for the proposition that you can deny something and say I had a good reason. It's like saying, Your Honor, I did not shoot that man, but if I did, he had it coming. Okay, but I mean this happens all the time. Let me ask this. Do you have a case where this charge was submitted and they found it to be improper because the person didn't admit an assault? What I have, Your Honor, is criminal cases saying it's improper. I have civil cases saying the law is exactly the same in criminal and civil, and I have no civil case permitting it. And so what the court has to decide is, the way it's been set up and the way Your Honor respectfully is arguing, it is more difficult to prove a civil case than a criminal case. It is easier to convict somebody of a crime because the criminal defendant doesn't get two bites at the apple. Those criminal cases say assault of acts, I think is what you would refer to. I just read those cases as saying you have to admit you were involved, you were involved in the fight. Not that you have to plead guilty to assault in that criminal case. You can't say I wasn't there and then say . . . A defendant must admit violating the statute under which he is being tried, then offer a statutory justification that's straight out of Van Brackle v. State, Your Honor. And so . . . We're never going to be trying a state criminal case. Sure. So here we are trying a state civil case in federal court. What federal case do you have that says that the court abused its discretion in giving this jury charge? The reason we submit the court abused its discretion, Your Honor, is we're supposed to apply the substantive law of the state. The state civil substantive law says criminal and civil are supposed to be the same for self-defense and for defense of others. The criminal law, substantive law, says that you must confess before you avoid. There is no state case permitting somebody to deny assault and then get a self-defense instruction. I did not assault that man, but if I did, he had it coming, two bites at the apple. Where is . . . you'll get into my question, but where is the practical prejudice for having given both of them in the light of the evidence in this case? The practical prejudice, thank you, Your Honor, is that it's two chances for them to get off. It's harder to win a civil case under this interpretation than a criminal case. Put it down here, put it down so I can understand it. In other words, under these facts, how would the result have been different if you had gotten the instruction that you're talking about? Well, I'm trying to understand the hypothetical. They would first have had to admit the assault, and then they would have had a self-defense instruction. But if they had . . . I don't really know what would have happened if they had admitted the assault. I think that it would have been a completely different trial. Excuse me? The jury found an assault. So there's no harm that they didn't have to admit the assault and the whole case turned on the self-defense. I respectfully disagree, Your Honor. It's entirely likely that they split votes back there, that they wanted to go home, they wanted to have a unanimous verdict, and they said, I'll give you assault if you give me self-defense. That is a possible scenario. Yeah, but that's not . . . that doesn't win the case for you, though. The possibility is in the hypothetical. All I have to show is, Your Honor, that there was no . . . and I understand that we're under an abusive discretion standard. I understand that. But we submit that there is no law supporting what happened here. Yeah, but there's no law opposing it. It's hard for me to say abusive discretion on a charge that I would have given in state court on any given day as an abusive discretion in the face of zero case law. You just have to . . . and I need to go on to my . . . because I need to get to my next points. You do. The court just needs to decide whether it wants to make it more difficult to prove a civil case than a criminal, because that's the net result of this. The next point of error, that they gave a presumption of reasonableness instruction, and I'll just share it with the court. This one . . . I mean, this . . . the evidence . . . it might be a close call whether the evidence supported this when I see your point on this. But since the jury found that both Holmes and Edwards also had a defense of themselves, self-defense, why does it matter that the jury also . . . It matters . . . thank you, Your Honor. It matters for two reasons. One, under the abusive discretion standard, there must be evidence in the record supporting instruction. We know that. And then, the Fifth Circuit rule is that the Fifth Circuit will not reverse if the instruction could not have affected the outcome. That's the Neely v. Pesek case. They can't say that this did not affect the outcome. There's no . . . They don't need a defense of others because they got the defense of self. But, they have a presumption of reasonable conduct. And we submit . . . and let me . . . if I could just take the court briefly through the testimony. I want to make sure I get to all my points of error. But . . . I'll make sure that you at least have opportunity to highlight this. Thank you. Your Honor, Judge Costa, you ask about the testimony of the defendants. The question is, is there any evidence at the moment of the assault that Richard King was attempting to enter the defendant's vehicle by force? Ephraim Holmes testified. I asked Mr. King to step away from the vehicle, that it wasn't for him. He said, that car is not for you, sir. Please step away. And he did. He said he did not perceive him as a threat because he was lost. He was intoxicated. Quote, I didn't perceive Mr. King as a threat. He had stepped away from his car. It's a free country. He could stand where he wanted to stand. And he said that part of the reason he wasn't a threat was the distance between him and the car. Patti LaBelle asked him if everything's okay. And he said, yes, it's fine. And this all happened two minutes before Zuri Edwards came out of the airport, knowing nothing about this prior discussion about the car, walked past Richard King, didn't even look his way, and turned his back on him. And I asked Zuri Edwards, if you'd thought he was a threat at the time, you wouldn't have had your back to him, correct? Correct. So, then he hears Richard King say something over the phone that he doesn't like, and the assault begins. And it's all on the videotape. So, there is absolutely zero evidence that Richard King was attempting to enter an occupied vehicle with force at the time, and the judge giving an instruction that they could presume that the conduct was reasonable. In a hotly contested case, juries cling to presumptions. There is no way they can say that did not affect the verdict. There's no evidence supporting it. Your argument is that when he referred to her as a black bitch, that is when the assault began? Yes, allegedly, and this would be completely out of character for Richard. I submit, Your Honor, this is just not who he is. But they claim that they heard Richard King say over the telephone to his brother, that black bitch keeps staring at me. And that was the phrase that led to Zuri Edwards closing on him, coming to him, not the other way around, and the chest bump and the melee. It had nothing to do with a car, nothing whatsoever to do with an attempt to enter a car at that moment in time. Is the chest bump, that's the first physical contact? Yes. Is that acknowledged by everybody? Zuri Edwards and Ephraim Holmes both acknowledge that there's a chest bump, and it's clear on the videotape. And the chest bump is initiated by LaBelle's people? Yes, Zuri Edwards, her manager and son. The final point is Norma Harrison. And what happened? Well, then what happened, you can see from the videotape that Ephraim Holmes comes from behind Zuri Edwards, swings a left and sucker punches Richard King in the face and comes back again with a right and a left and starts driving him backwards. Norma Harris comes out of the car, rushes Richard King, and pushes him with both of her hands, driving her legs into a concrete pillar. And that's what I've submitted the photographic evidence for the Court. The jury heard all of this. I mean, they heard it, and they have a lot more leeway than we have. So, I mean, why are we going to upset a jury verdict here? I mean, under all these circumstances, I mean, they heard it all. They heard your arguments. They heard essentially what you've said here, even about the instructions. Your Honor, I have dedicated my life to supporting the jury trial system, and I believe in it fully. However, we want a jury to be correctly instructed. There needs to be a legal basis for instructions. There needs to be a factual and evidentiary basis for instructions. Lacking those, there's a risk that a trial will not be a fair trial, and we submit that this trial was fundamentally unfair to Richard as to the result. No, I mean, I can see the argument that you are making, and it's certainly a plausible argument to make to a jury, but it doesn't sound like a winning argument on appeal to me. I mean, that's a problem. You can tell me why I'm wrong, and I guess you've tried so far. All I could do, Your Honor, is say there's no factual basis for some of these instructions. There's no legal basis. They can't say that it did not affect the verdict. And I know I need to sit down, but that last photograph shows Norma Harris with both her hands on Richard King. You can see in the prior ones her charging toward him. Again, this had nothing to do with the car. And the jury's verdict that she did not assault Richard? There is the definition of assault, and I need to close with this. You've got some time for rebuttal. Yes, the definition of assault is an intentional contact that she had reason to believe was offensive, and there is no evidence that what she did was anything but that. Thank you, Your Honor. Bracken, go ahead. Thank you, Your Honor. May it please the Court, my name is Jeff Bracken, and I represent the appellants in this matter along with Philip Brinson. I'd like to go back and answer Judge Haynes' question. You asked Mr. Raley about whether these sorts of matters are submitted as affirmative defenses in state court all the time. And Mr. Raley, I think, was making the distinction that if it had to do with intent, then it doesn't get submitted as an affirmative defense. Well, we all know, as we sit here today, that waiver is all the time submitted as an affirmative defense in state courts, and it's, I think, by anybody's definition, the intentional relinquishment of a known right. Clearly, there can't be any better example of an affirmative defense that's submitted for the jury to determine that had to do with intent. Well, I think he's saying the intent is in the original act in the plaintiff's case and also in the defense, and he's saying it's inconsistent, but I'm not really sure it's inconsistent. I just think he's using the phrase confession and avoidance well beyond its moorings, as I understand them. Yes, Your Honor. And then, Judge Costa, you asked some questions about what the jury found. And again, members of the panel, all of these arguments were made strenuously, vociferously, and repeatedly to the jury. We saw the video again and again and again and the still photos, but what the panel needs to remember is the first picture that Mr. Raley is showing you is after this jury found that my client, Mr. Edwards, was struck in the cheek by Mr. King. That jury answer is not on appeal. Who proctored him to do that? Well, I mean, the testimony was about the conversations but also the fact that Mr. King was inebriated and contrary to Mr. Raley's statement, was a threat not only to himself but to others. And there was testimony. How great. Well, he was obviously ranting and raving. He was approaching the vehicle. He placed his hands on the vehicle to try and enter the passenger side. He repeatedly told Mr. Holmes that, in fact, he wanted to get inside the vehicle. And with regard to Mr. Edwards, he struck Mr. Edwards for no apparent reason. You say he struck for no—he was drunk, out of control, and he struck him, and as far as you know, he had no motive other than the fact that he was just drunk. Well, he was obviously a drunk, angry man on spring break, and so he did things that I would agree with Mr. Raley he probably wouldn't have done. Did the evidence show anything he was angry about? Yes, there was testimony that he was yelling at the occupants of the car yard. Because he wasn't allowed in the limo? Presumably so, ma'am. I'm sorry? Do we know why he was angry? No, and he gave no explanation to the jury because, according to Mr. Raley's facts, he had suffered this traumatic head injury that impaired his memory. Our expert testimony from the stand that the jury heard was because he was at the level of alcohol that he was, he was at a toxic level. Not surprising that he didn't remember anything having to do with this incident, not because he struck his head. So you're challenging that he's not disabled now, is that what you're saying? Absolutely. That was, we put on— He's not even disabled at this point. No, Your Honor. And we put on testimony from the medical experts of that issue. The jury heard that? The jury heard all of that. The jury heard all of the evidence of the damages, all of the causation evidence, but this appeal, I believe, is relatively simple because of where it's being presented. What do you mean where it's being presented? In the appellate court. He's asking you— He's asking us to be the jury. Yes. He's asking you to go back and, as Judge Jolly intimated, second-guess the jury. Well, he hasn't even— But we do require juries to be properly instructed. Of course. We love the jury, but the jury can only be as good as the instructions given. That's kind of his argument. And so what about—well, Judge Jolly doesn't agree, but I'm going to say that. So we'll assume arguendo that. Okay. So what about his argument that the incident with the car and trying to get in the car had already passed some minutes before the physical contact started, so that the entry into the car isn't what provoked the physical contact. It was the calling Patti LaBelle a name. Well, he made that argument to the jury, and the jury didn't believe him. He made, Your Honor, that exact same story, that it was Mr. Edwards, not his client, that was out of control. Mr. Edwards heard comments, and he reacted. The jury didn't find that. I mean, they didn't find it two times. A, they found that Mr. Edwards was assaulted by Mr. King, which has not been questioned by appellant in this matter. But moreover, if you look at question number nine, that's the defamation case, and that really crystallizes what the jury believed and heard the evidence was. The jury essentially found that Mr. King initially assaulted Mr. Edwards, not the other way around. That jury question and the jury's answer to that has not been questioned by the appellant in this matter. There was no objection to these issues on the ground of no evidence, and I heartily disagree with Mr. Raley that there's no appellate court cases that allow Judge Ellison to, incidentally, the administration of justice in his court, submit this case the way he did. We think the Norris case and the Gibbons case are directly on point as to how this sort of case can be submitted to a jury in Texas. Isn't it the difference between inferential rebuttal and asking it as an affirmative defense? Yes, and, you know, they cited that 1966 case, which really kind of phrases it a little bit better, but you've got to remember that that 66 case was before the penal code came into effect. So I would suggest to this panel that the better cases on how to submit this issue are the Norris and the Gibbons case. And again, unlike the Gibbons case, there's no question but that we pled these, and everybody knew these were the affirmative defenses that were submitted. How much weight should we place, because it seems like his case really rests on our construction of the video, and how much weight should we place on our own observation, if any, of the video? I mean, is this part of what we should be doing as the appellate court? I don't think so, Your Honor. The appellate court's not a fact finder, and the jury heard this, as I said, and saw it repeatedly. It's not pressing insufficiency of evidence at this point. Yeah, that's what I heard today. So certainly with regard to one of my clients, Norma Harris, it doesn't appear that they're seeking any new trial against her anymore because there is more than a scintilla of evidence to support the fact, as Judge Ellison found in his two orders denying new trial, that she did not assault Mr. Gibbs. But he is saying there's not evidence to support the jury question, so, I mean, I don't know how we'd parse that out. But the fact is he's talking about the video here today. So I'm gathering that he thinks the video matters. So I'm asking you what you think the video, how you think the video plays in the appellate court analysis. Well, we cited the court to the cases we could try and find about where a party had proffered a video and showed the video to the jury, and I think even Mr. Railey would have to concede that this is not the be-all, the end-all. I mean, he said repeatedly at the trial, isn't this what this shows? And defendants would repeatedly say, no, that's not what it shows. And then the rhetorical question would be posed to the witness at the time, the defendant. Well, if the jury thinks that the video is the truth, then I guess you would go with the video. We're worse to that effect. I mean, that was done repeatedly. So the jury considered, as they were instructed to by Judge Ellison, all of the evidence and came to a contrary decision than what Mr. Railey wanted. That's not something I don't think that the appellate court needs to go dig into, especially if it's trying to figure out if this grainy footage shot from a certain angle is dispositive. I don't think it is. The jury saw it. The jury did see it. Yes, you are, repeatedly. And they also saw some still photos of each one of the video, so they saw that as well. It's subject to all kinds of interpretations. I mean, the picture is. And the jury is the one that can best do it in light of the testimony they're hearing. And anecdotally, Your Honor, when we were board-ironing this jury, it was on a Monday, as I recall, and everybody obviously had been through the NFL football season, and they'd watched replay upon replay the day immediately before. And I asked them, I said, how many of you all saw those replays? And as I recall, one lady stood up and said, I saw that one. It was actually a game the Texans won, so everybody was very excited about it. And she said, and they showed us seven different angles. And I felt like I could get it right if I had seven different angles to look at. This is one angle in a dark airport, and it's not dispositive. And the case law doesn't tell you that it is dispositive. Well, and those video replays are often subject to disagreement, and then you have this incontrovertible evidence kind of standard of review. Being from Dallas, they're still talking about Dez Bryant. There you go. So we get that. I don't mean to take up any more time of the court. I mean, clearly Judge Ellison, I think, tried. You don't have to say a whole lot more than the jury spoke and then refer to the instruction argument. Yeah. I mean, the jury spoke, and again, there is more than sufficient evidence to support this jury's decisions, not just the testimony of my clients. The police report, which is Plaintiff's Exhibit 162, basically details what the defendant's position was as to what transpired the evening of March 11, 2011. The jury, by deciding that there was nothing defamatory in here, I would suggest to you, if they read it, they acknowledged that my clients didn't do anything wrong and found accordingly. King threw the first punch. Ma'am? What about Harris? King threw the first punch. Yes. I mean, Harris does undisputably hit King, so her whole argument for why that wasn't assault has to do with that she didn't have the intent. How do you not have the intent to hit somebody, but then you hit him? I don't think she testified that she hit him, Your Honor. I think the testimony was that she pushed him, and, again, it was a time after she had already observed. Push is an assault. Well, not under the definition. It had to have been a push. You're on the injury part? You're saying it's not an injury with the intent? Yes. I mean, it's not with the intent to cause bodily injury, and I thought Judge Ellison did a very good job parsing through it in his two orders as to why the mere fact that she maybe pushed Mr. King is insufficient under the jury charge that was submitted, and not objected to, by the way. Question number one was not objected to by Mr. Raley or the lawyers for Mr. King. She had to have intentionally caused bodily injury, and remember, of course, the jury got the chance to see Ms. Harris. She's probably about 90 pounds soaking wet, and she's a hairdresser by trade. How big is King?  He's a strapping young man with an alcohol level at the time that was considered to be toxic. Unless the panel has any more questions of me, I appreciate the panel's time. Thank you, Mr. Bracken. Mr. Raley, you've sided with the case now. Thank you, Your Honor. The police report was not exhibited at trial because they moved to exclude it, and the judge granted their motion, but they brought it up in the appeal, and so I want to read from it. Quote, it is clear that Richard King did not initiate the physical altercation and instead was physically assaulted by Zuri Edwards, Ephraim Holmes, and Norma Harris. This was the cause of Richard King's bodily injury to the back of his head. Direct cause. That's from the police report. So let's be very clear on what that says. It's not in the record. It's not in the record. He brought it up, and I just wanted to— Isn't the police view just another jury, in essence? I mean, the police weren't there. So they draw a conclusion based on their investigation, and the jury also draws a conclusion based on its investigation, which is limited to what you all present. The police interviewed a lot of witnesses and everything. I understand it's not on the record. I didn't bring it up until they did, Your Honor. I do encourage the court to watch the video for itself. I don't know how many different angles you can have at an airport surveillance video, but it certainly appears on its face completely inconsistent with everything that the defendants have tried to say on this. By the way, there was no jury finding that Richard King struck Zuri Edwards. There was a finding of assault, and one of the definitions of assault is a contact that you should reasonably believe is offensive. It doesn't mean a strike, and you can see very clearly on the videotape—I hope you'll watch it— that after Zuri Edwards chest bumps Richard, he's got his right phone to the ear, and he puts his left hand out with the hand open towards Zuri Edwards' chest and backs up. He's merely creating space. There's no evidence on a video of striking in the face, and that's when Zuri Ephraim Holmes comes over the top. I understand that the jury saw these things. Okay, typically these video cases are like summary judgment, and they want to take the video and say the video proves something that would rebut the sort of self-serving plaintiff's testimony or something like that, and that's how these video cases typically come up in my experience. I don't remember another case where the video is being used to countermand a jury verdict, and it would seem like a very high hurdle to do that. What I'm using—I don't deny that I have a difficult burden, Your Honor, but I embrace it and say we can meet it. There is zero evidence when you consider the testimony of the defendants and the videotape together justifying the submission of the presumption of reasonable conduct for the occupied vehicle. The video is very clear. The testimony is very clear on that point. There is no evidence supporting that, none whatsoever. They're not a scintilla. Same with Norma Harris. There is not a scintilla of evidence that what she did, what she admits doing, and what you can see from the stills in the video she did, was anything but an intentional contact that she should reasonably believe was offensive. There's no evidence it was anything but that. And we do think that the Court should have—and this is one of our points of error— granted a new trial on that point, on the Norma Harris point. So let's see if there's anything else that counsel mentioned. Your Honor, Judge Haynes's question regarding intent. The affirmative defense is under Rule 94 in Texas. According to satisfaction, contributory negligence, assumption of the risk, estoppel, failure of consideration, res judicata, statute of fraud, statute of limitations, none of those have anything to do with the intent of the defendant, and that was the distinction I was trying to make earlier. It's not just the traditional affirmative defense case. It's its own little animal. And so all I can offer to the Court is the criminal cases say very clearly you must admit assault before you can get a self-defense jury instruction. The civil cases say criminal and civil law are supposed to be the same. There is no civil case allowing a defendant to deny the conduct and get a self-defense instruction. The Gibbons doesn't allow that. The other case doesn't allow that. Norris doesn't allow that. Neither case allows what Judge Ellison did here. And so if he hadn't submitted self-defense, we wouldn't have this result, so therefore it affected the verdict. If he hadn't submitted presumptions of reasonableness, nobody can say honestly in this Court that it could not have caused an improper verdict, which is all that I need to show. I'm happy to answer any other questions of the Court. If not, I appreciate all of your time this morning. Thank you all. Take care.